**MELLON BANK, N.A., et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 97–151T through 97–155T, 97–253T, 97–482T, 97–556T, 97–557T, 97–558T, 97–771T through 97–780T.**

United States Court of Federal Claims.

July 17, 2000.

---

146. Tr. at 2206–07.

Joseph W. Klein, Pittsburgh, PA, for plaintiffs; Mark Bookman, Leo N. Hitt, of counsel.

Robert Stoddart, with whom were Paula M. Junghans, Acting Assistant Attorney General, Mildred L. Seidman, Chief, and David Gustafson, Assistant Chief, Washington, D.C., for defendant.

Robert E. Kolek, Chicago, IL, for American Bankers Association as amicus curiae; Charles D. Fox IV, Neil Lloyd, of counsel.

## OPINION

ANDEWELT, Judge.

### I.

In these consolidated tax refund actions, plaintiffs, Mellon Bank, N.A., and Real Estate Trust, seek a refund of income taxes paid by 13 trusts created for the benefit of

members of the Richard K. Mellon family.[1] The dispute at issue involves tax years 1989 through 1992 and focuses on the deductibility under I.R.C. § 67 of fees paid by the trustees for two types of trust services: investment strategy advice provided by private investment advisors, and accounting, tax preparation, and management services provided by Richard K. Mellon & Sons (RKM & S). This action is before the court on the parties' cross-motions for summary judgment. Defendant contends that these payments are properly characterized as miscellaneous itemized deductions which, pursuant to I.R.C. § 67(a), are allowed when calculating adjusted gross income only to the extent that the aggregate of such deductions exceeds two percent of the adjusted gross income. Plaintiffs contend that these payments fall within the exception to I.R.C. § 67(a) contained in I.R.C. § 67(e)(1) and are allowable as direct deductions from the adjusted gross income, not subject to the two percent floor in I.R.C. § 67(a). For the reasons set forth below, the parties' cross-motions are each denied.

## II.

I.R.C. § 67(a) establishes the two percent floor for miscellaneous deductions as follows:

> In the case of an individual, the miscellaneous itemized deductions for any taxable year shall be allowed only to the extent that the aggregate of such deductions exceeds 2 percent of adjusted gross income.

I.R.C. § 67(e) applies subsection (a) to trusts as follows:

> For purposes of this section, the adjusted gross income of an estate or trust shall be computed in the same manner as in the case of an individual, except that—
>
> (1) the deductions for costs which are paid or incurred in connection with the administration of the estate or trust and which would not have been incurred if the property were not held in such trust or estate . . .

> \*    \*    \*    \*    \*    \*

shall be treated as allowable in arriving at adjusted gross income.

The question at issue here is whether the fees paid by the trustees to private investment advisors and RKM & S fall within the exception set forth in I.R.C. § 67(e)(1). The Court of Appeals for the Federal Circuit has articulated the following approach to statutory interpretation: "The first and foremost 'tool' to be used is the statute's text, giving it its plain meaning. Because a statute's text is Congress's final expression of its intent, if the text answers the question, that is the end of the matter." *Timex V.I., Inc. v. United States,* 157 F.3d 879, 882 (Fed.Cir.1998) (citations omitted). In assessing plain meaning, the courts "must interpret statutory words as taking their ordinary, common meaning unless otherwise defined by Congress." *Hoechst–Roussel Pharm., Inc. v. Lehman,* 109 F.3d 756, 758 (Fed.Cir.1997).

The ordinary and common meaning of I.R.C. § 67(e)(1) is plain, straightforward, and unambiguous. The wording establishes two distinct prerequisites for costs to qualify for exclusion from the two percent floor for miscellaneous deductions set forth in I.R.C. § 67(a): the fees (1) must be "paid or incurred in connection with the administration of the . . . trust"; and (2) must be costs "which would not have been incurred if the property were not held in such trust." The first prerequisite defines the necessary relationship between the costs and the administration of the trust ("in connection with"). The term "connection" is defined as a "relationship or association." *Webster's Third New Int'l Dictionary* 481 (1976). Hence, costs are "incurred in connection with the administration of the . . . trust" if there is a relationship or association between the incurring of the costs and the administration of the trust. The second prerequisite, that the fees must be costs "which would not have been incurred if the property were not held in such trust," focuses in a different direction. The term "would" is defined as a form of the verb "will" which in turn is

---

1. Plaintiff Mellon Bank has filed suit on behalf of 12 trusts of which it is co-trustee and plaintiff Real Estate Trust has filed suit on its own behalf. These 13 trusts were created by Richard K. Mellon or, subsequently, by his widow, Constance Prosser (Mellon) Burrell. The trusts are all long-term, irrevocable trusts for the benefit of charity and members of the Mellon family.

defined as a term "used to express frequent, customary, or habitual action or natural tendency or disposition." *Id.* at 2616. Hence, by its words, the second prerequisite does not concern the relationship between the trust and the costs but rather requires an evaluation of the circumstances that likely would have resulted had the assets in issue not been placed in trust. The plain meaning of the second prerequisite requires that costs are not excluded under I.R.C. § 67(e)(1) from the two percent floor set forth in I.R.C. § 67(a) if the same costs would have been incurred even if the funds were not held in trust.

### III.

▮ Plaintiffs do not dispute the above interpretation of the first prerequisite set forth in I.R.C. § 67(e)(1) but propose a different interpretation of the second prerequisite. Plaintiffs argue that to qualify under the second prerequisite, it is sufficient that the costs were incurred in furtherance of the trustee's fiduciary obligations under state law. Plaintiffs argue that if a trustee incurs costs as part of its efforts to satisfy state fiduciary obligations, then those costs constitute fiduciary fees and qualify under the second prerequisite in I.R.C. § 67(e)(1), regardless of whether identical costs for identical services would have been incurred in a non-fiduciary context if the funds were not held in trust. Thus, because the trustees had hired private investment advisors and RKM & S to fulfill their fiduciary obligations under Pennsylvania law, plaintiffs argue that the costs for these services qualify under the second prerequisite in I.R.C. § 67(e)(1).

To support their interpretation of the second prerequisite, plaintiffs rely upon the decision of the Court of Appeals for the Sixth Circuit in *O'Neill v. Commissioner*, 994 F.2d 302 (6th Cir.1993). *O'Neill* involved the deductibility of fees paid by a trust for investment advice provided by a private firm. The Tax Court had concluded that these expenses did not fall within the scope of I.R.C. § 67(e)(1), as follows:

> We believe that the thrust of the language of section 67(e) is that only those costs which are *unique* to the administration of

an estate or trust are to be deducted from gross income without being subject to the 2–percent floor on itemized deductions set forth at section 67(a). Examples of items unique to the administration of a trust or estate would be the fees paid to a trustee and trust accounting fees mandated by law or the trust agreement. Individual investors routinely incur costs for investment advice as an integral part of their investment activities. Consequently, it cannot be argued that such costs are somehow unique to the administration of an estate or trust simply because a fiduciary might feel compelled to incur such expenses in order to meet the prudent person standards imposed by State law.

98 T.C. 227, 230, 1992 WL 37354 (1992). On appeal, the Sixth Circuit reversed and rejected the Tax Court's conclusion that I.R.C. § 67(e)(1) covers costs unique to a trust and deemed it sufficient that the trustee incurred the costs in an exercise of the trustee's fiduciary obligations under state law. *See* 994 F.2d at 304. The court explained that the trustees had a duty under Ohio law to diversify the investment of trust assets so as to distribute the risk of loss within the trust and that because the trustees lacked experience in investments, they sought the assistance of an investment advisor to satisfy their obligations as trustees. *See id.* The court further explained that such costs are subject to the exception set forth in I.R.C. § 67(e)(1), as follows:

> Without [the investment advisor's] management, the co-trustees would have put at risk the assets of the Trust. Thus, the investment advisory fees were necessary to the continued growth of the Trust and *were caused by the fiduciary duties of the co-trustees.*

*Id.* (emphasis added).

Defendant argues that *O'Neill* is distinguishable on the facts in a number of ways, including the fact that Mellon Bank, unlike the trustees in *O'Neill*, was not compelled to hire outside advisors to satisfy its trust obligations in that Mellon Bank is a premier trust advisor with the in-house capacity to advise even the largest of trusts. But it is not necessary for this court to address defen-

dant's various fact-based arguments because the court agrees with defendant's alternative legal argument that the Sixth Circuit incorrectly interpreted and applied I.R.C. § 67(e)(1) by failing to follow the plain meaning of its second prerequisite.

As described above, to qualify for exemption from the two percent floor in I.R.C. § 67(a), the Sixth Circuit deemed it sufficient under I.R.C. § 67(e)(1) that the costs incurred "were caused by the fiduciary duties of the [ ]trustees." But at its essence, this analysis amounts to no more than an application of the first prerequisite in I.R.C. § 67(e)(1) that the costs were "incurred in connection with the administration of the . . . trust," *i.e.*, the costs were "incurred in connection with the administration of the . . . trust" because they "were caused by the fiduciary duties of the [ ]trustees." As this court explained above, the plain wording of the second prerequisite does not focus on the relationship between the costs and the administration of the trust but rather focuses directly on the independent issue of whether the costs "would not have been incurred if the property were not held in such trust." The Sixth Circuit touched on this crucial issue when presented with the Tax Court's rationale that "[i]ndividual investors routinely incur costs for investment advice as an integral part of their investment activities." *O'Neill,* 98 T.C. at 230. The Sixth Circuit rejected the Tax Court's reasoning as follows:

> Nevertheless, [individual investors] are not *required* to consult advisors and suffer no penalties or potential liability if they act negligently for themselves. Therefore, fiduciaries uniquely occupy a position of trust for others and have an obligation to the beneficiaries to exercise proper skill and care with the assets of the trust.

994 F.2d at 304. Plaintiffs argue that they hired the independent investment advisors and RKM & S as agents of the trustees and, therefore, that the services they provided are properly characterized as duties of the trustees. Hence, plaintiffs argue, the fees incurred for those services should be characterized as trustee fees, which are directly deductible under *O'Neill.*

The Sixth Circuit's conclusion that different legal obligations apply depending upon whether or not assets are held in trust is correct. A trustee has a legal obligation to exercise proper skill and care with respect to the assets of the trust while an individual holding assets in a nontrust context ordinarily has no similar legal obligation. But the wording of the second prerequisite in I.R.C. § 67(e)(1) does not refer to legal obligations, trustee fees, or fiduciary responsibilities, but rather focuses on the particular costs incurred and whether those costs "would not have been incurred if the property were not held in such trust." The absence of a legal obligation in a nontrust context arguably leaves open the possibility, for example, that in certain circumstances investment advisory fees *may* not have been incurred if the property were not held in trust, but it hardly supports the conclusion that in all situations investment advisory fees "*would* not have been incurred if the property were not held in such trust" (emphasis added). The absence of a legal obligation to incur particular costs simply does not mean that an individual investor would not reasonably be expected to have incurred those costs.

As to plaintiffs' proposed characterization of the investment advisory fees as trustee fees, assuming this characterization is appropriate, the fact that costs can be characterized as trustee fees in a trust context says nothing about whether those costs would not have been incurred in a nontrust context. When a trustee assumes responsibility over trust property, the trustee must perform a variety of tasks, some of which are unique to a trust and some of which would have to be performed even if the property were not held in trust. Hence, characterizing the fees paid for the performance of these tasks as trustee fees and determining whether or not those fees would have been incurred in the absence of a trust are independent and not logically related inquiries. Whether costs for particular services can be characterized as trustee fees is not mentioned as a factor in I.R.C. § 67(e)(1) and is simply not relevant to the application of the statute's plain meaning.

The fallacy in concluding that investment advisory fees incurred in furtherance of trust

obligations are necessarily fees that "would not have been incurred if the property were not held in such trust" is apparent from an analysis of the nature of a trustee's legal responsibilities in making investment decisions. Under Pennsylvania law, as in many other jurisdictions,[2] investments by a trustee are governed by the "prudent man rule," which provides in part:

> Any investment shall be an authorized investment if purchased or retained in the exercise of that degree of judgment and care, under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income to be derived therefrom as well as the probable safety of their capital.

20 Pa. Cons.Stat. § 7302(b) (1975). Hence, rather than encouraging trustees to make investment decisions in a different manner than an individual investor, Pennsylvania law obliges a trustee to exercise judgment in making investments "which men of prudence, discretion and intelligence exercise in the management of their own affairs." Therefore, Pennsylvania law essentially encourages a trustee to incur costs for investment advice in much the same manner as would a prudent investor in the absence of a trust. Given this intention in the trust statutes that trustees act in the same manner as would a prudent investor in a nontrust context, it simply is not reasonable to conclude that fees for investment advice incurred by a trustee pursuant to its statutory trust obligations would always constitute fees "which would not have been incurred if the property were not held in such trust."

The same reasoning applies to the fees paid to RKM & S for accounting, tax preparation, and management services. Certain types of such services would be employed whether or not the property were held in trust. It would be inconsistent with the plain meaning of I.R.C. § 67(e)(1) to accord the costs for such services direct deductibility simply because the trustee was legally obliged under state trust laws to incur those costs.

■ Plaintiffs' proposed interpretation of the second prerequisite in I.R.C. § 67(e)(1) can be faulted not only for adding words and concepts that unambiguously are not included in the statutory wording, but also for being inconsistent with the cardinal principle of statutory interpretation that statutes should be interpreted, where reasonably possible, to give independent meaning to each statutory provision so as not to render any particular provision superfluous.[3] Plaintiffs propose, in effect, that costs "which would not have been incurred if the property were not held in such trust" are the same as costs that were incurred by the trustee in furtherance of state fiduciary obligations. But all costs that are incurred in furtherance of state fiduciary obligations necessarily would be costs that were incurred "in connection with the administration of the ... trust" and, hence, would fall under the first prerequisite in I.R.C. § 67(e)(1). Under plaintiffs' proposed interpretation, because all costs falling under the second prerequisite also would fall under the first prerequisite, I.R.C. § 67(e)(1) would cover precisely the same costs if the first prerequisite was eliminated and only the second prerequisite was included. Plaintiffs' interpretation of the second prerequisite,

2. *See generally* George Gleeson Bogert & George Taylor Bogert, *The Law of Trusts and Trustees* §§ 612–13 (1980 & Supp.1999).

3. *See Regions Hosp. v. Shalala*, 522 U.S. 448, 467, 118 S.Ct. 909, 139 L.Ed.2d 895 (1998) (Scalia, J., dissenting), *quoting Washington Market Co. v. Hoffman*, 101 U.S. 112, 115–16, 25 L.Ed. 782 (1879) ("We are not at liberty to construe any statute so as to deny effect to any part of its language. It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word. As early as in Bacon's Abridgment, sect. 2, it was said that 'a

statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.' "); *see also Colautti v. Franklin*, 439 U.S. 379, 392, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979) ("Appellants' argument ... would make either the first or the second condition redundant or largely superfluous, in violation of the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative."), *overruled in part on other grounds, Webster v. Reproductive Health Servs.*, 492 U.S. 490, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989).

therefore, would render the first prerequisite superfluous.[4]

4. The use of Venn diagrams can be an effective way to detect and understand whether a proposed interpretation of a statute renders a particular provision superfluous. Venn diagrams are used to indicate the relationship between sets. Technically, a set is a group of distinct elements which have common properties, for example, where all elements satisfy the same conditions or meet the same requirements. *See* Jan Gullberg, *Mathematics from the Birth of Numbers* § 7.0, at 232 (1997). In Venn diagrams, a circle typically is used to define a particular set and all items that have the required properties are viewed as within the circle, and all items that do not are viewed as outside the circle. *See generally id.* § 7.2.

The relationship between two sets is depicted by the position and overlap of two circles. Circles representing two sets may intersect as follows:

## FIGURE 1

In such case, the area of intersection (I & II) represents those elements that satisfy the individual conditions or requirements of both sets. *See id.* § 7.2 at 242. For example, where Set I represents all items that are the color red and Set II represents all automobiles, the area where Set I and Set II intersect (I & II) represents all red automobiles. Circles representing two sets also may not intersect at all:

## FIGURE 2

In such case, there are no elements that satisfy the respective requirements of these disjoint sets. *See id.* § 7.2 at 243. For example, where Set I represents all items that are exclusively the color red and Set II represents all items that are exclusively the color blue, no items would meet the conditions of both sets, and hence, the circles would not overlap. Finally, a circle representing one set may be entirely subsumed within a circle representing a larger set:

## FIGURE 3

In such case, all elements in the smaller set also satisfy the conditions or requirements of the larger set; thus, the smaller set is a proper subset of the larger set. *See id.* § 7.2 at 243. For example, where Set I represents all items that are red in color and Set II represents all red automobiles, because all red automobiles are red in color, the circle representing Set II is fully subsumed within the circle representing Set I.

Venn diagrams are useful in analyzing issues of statutory interpretation, for example, where the statute lists two requirements, each of which must be satisfied to qualify for the particular treatment under the statute. In such case, the interpretation of the respective statutory requirements proposed by a party can be depicted in Venn diagram form. Each individual statutory requirement as interpreted by the party constitutes a distinct set and a circle is employed for that set to depict all possible situations that satisfy that requirement. Here, where I.R.C. § 67(e)(1) contains two necessary requirements to qualify for exclusion from the two percent floor in I.R.C. § 67(a), two circles are used, one depicting all costs "which are paid or incurred in connection with the administration of the ... trust," and the second encompassing all costs "which would not have been incurred if the property were not held in such trust." The parties' proposed interpretations of each of the two statutory requirements are then analyzed to assess the extent to which the two circles intersect, *i.e.,* the extent to which costs satisfy both statutory requirements and, hence, qualify for exemption. A proposed interpretation of the two statutory requirements is viable only where the Venn diagram depiction results in intersecting circles as shown in Figure 1 above. Under such a valid interpretation, each statutory requirement is necessary and has meaning because both requirements are necessary to define those situations that satisfy both statutory requirements.

The other two relationships between the circles depicted in Figures 2 and 3 above produce non-viable interpretations. If the two circles do not intersect as shown in Figure 2, then no set of circumstances satisfies both statutory requirements. This means that the requirements of the statute can never be met, which hardly can be the result intended by Congress. If a proposed statutory interpretation results in the Venn diagram depicted in Figure 3 above, where the second circle is completely subsumed within the first, then it is obvious from viewing the Venn diagram that the statute would cover the same

Plaintiffs attempt to buttress their interpretation of the second prerequisite by arguing that the "origin of the claim" doctrine should guide the court to focus on whether an expense was incurred in furtherance of fiduciary duties. But this argument relies on an overly broad conception of the "origin of the claim" doctrine. Since its enunciation in *United States v. Gilmore*, the doctrine has been used only to determine whether an expense is deductible. *See* 372 U.S. 39, 49, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963) ("the origin and character of the claim with respect to which an expense was incurred ... is the controlling basic test of ... whether it is deductible or not"); *see also Dana Corp. v. United States*, 174 F.3d 1344, 1350 (Fed.Cir. 1999). The issue before this court is not whether the fees paid by the trustees to private investment advisors and RKM & S are deductible but rather whether those fees are exempt from the two percent floor in I.R.C. § 67(a).

### IV.

Plaintiffs argue that the legislative history of the Tax Reform Act of 1986, of which I.R.C. § 67(e)(1) is a part, supports their proposed interpretation of the second prerequisite. Upon review, however, the limited legislative history is fully consistent with Congress intending I.R.C. § 67(e)(1) to be interpreted as plainly written. No pertinent legislative history specifically addresses the disputed wording of I.R.C. § 67(e)(1). Plaintiffs contend that the legislative history that generally addresses the two percent floor for miscellaneous itemized deductions in I.R.C. § 67(a) indicates that Congress intended for

that floor to address several recurrent problems caused by prior tax treatment of miscellaneous deductions and common errors made by individual taxpayers. Plaintiffs then argue that trusts did not contribute to those problems and errors and, therefore, that the appropriate implication is that I.R.C. § 67(e)(1) exempts trust expenses from the two percent floor in I.R.C. § 67(a). But if Congress intended to exempt completely trust costs from the two percent floor, it could have done so by specifically excluding trusts from I.R.C. § 67(a) or by including in I.R.C. § 67(e)(1) only the first prerequisite which covers costs "incurred in connection with the administration of the ... trust." Instead, Congress chose to include a second prerequisite, which, by its plain terms, requires consideration of whether or not the costs would have been incurred if the property were not held in trust.

On this point, the purpose of the second prerequisite appears to be revealed in the portions of the legislative history that indicate Congress's intent in enacting the Tax Reform Act of 1986. Congress intended to make the tax laws more fair by preventing wealthy and sophisticated taxpayers from using tax shelters or trusts to gain tax benefits unavailable to other individuals. Indeed, the following explanation demonstrates that when Congress considered the Tax Reform Act of 1986, one of its primary objectives was fairness:

> [Congress designed the Tax Reform Act of 1986] to provide a tax system that ensures that individuals with similar incomes pay similar amounts of tax. The ability of

---

situations if only the second requirement were included and the first omitted. Hence, such an interpretation is not viable because the first statutory requirement is irrelevant and constitutes mere surplusage, a result, as described above, not permitted by the canons of statutory construction.

Plaintiffs' proposed interpretation of the second requirement in I.R.C. § 67(e)(1) places us squarely within the Venn diagram depicted in Figure 3 above. Plaintiffs interpret the first requirement in I.R.C. § 67(e)(1) according to its plain meaning which, as described above, covers all situations where there is a relationship or association between the incurring of the costs and the administration of the trust. Plaintiffs then interpret the second requirement as encom-

passing all situations where the trustee incurs costs in furtherance of the trustee's fiduciary obligations for the trust under state law. But all situations where a trustee incurs costs in furtherance of the trustee's fiduciary obligations under state law (the second requirement) also involve situations where there is a relationship or association between the incurring of the costs and the administration of the trust (the first requirement). Hence, the Venn diagram that results from this proposed interpretation would be the diagram depicted in Figure 3 above, where the circle representing the second requirement is totally subsumed within the circle representing the first requirement. As explained above, this depiction demonstrates that plaintiffs' proposed interpretation is not viable.

some individuals to reduce their tax liability excessively under prior law eroded the tax base and required tax rates to be higher than otherwise would have been necessary. Congress was concerned that other individuals, unable to take advantage of tax shelters, had lost confidence in the tax system and may have responded by evading their tax liability.

Staff of the Joint Comm. on Taxation, 100th Cong., 1st Sess., *General Explanation of the Tax Reform Act of 1986*, App. A (Comm. Print 1987). As part of its concern with fairness, Congress examined the taxation of trusts. The Senate Finance Committee report explains:

> The present [pre–1986] rules relating to the taxation of trusts and estates permit the reduction of taxation through the creation of entities that are taxed separately from the beneficiaries or grantor of the trust or estate. This result arises because any retained income of a trust or estate is taxed to the trust or estate under a separate set of rate brackets and exemptions from those of its grantor and beneficiaries.
>
> \*   \*   \*   \*   \*   \*
>
> The committee believes that the tax benefits which result from the ability to split income between a trust or estate and its beneficiaries should be eliminated or significantly reduced.

S.Rep. No. 313, 99th Cong., 2d Sess. at 867–68, *reprinted in* 1986–3 C.B. Vol. 3 at 867–68, App. A.[5]

It is not disputed that fees incurred by individuals for investment advice and accounting, tax preparation, and management services are generally subject to the two percent floor for miscellaneous deductions. *See* I.R.C. §§ 67, 212. Interpreting I.R.C. § 67(e)(1) according to its plain meaning therefore would further Congress's effort to secure fairness by providing an equivalency in taxation rules between taxation of trusts and taxation of individual taxpayers. An individual, by placing assets in a trust, will not secure a deduction for investment expenses that he or she would not receive in the absence of a trust.[6]

## V.

Next, although the instant action involves the deductibility of fees paid by trustees to outside advisors, plaintiffs, along with The American Bankers Association, amicus in this action, contend that interpreting I.R.C. § 67(e)(1) according to its plain meaning could require similar tax treatment for services, such as investment advice, provided directly by the trustee, without outside assistance. Plaintiffs and amicus further argue that an apportionment of trustee fees for tax purposes between fees that are subject to the two percent floor and those that are not would be difficult to administer and also would be inconsistent with the IRS's prior practice of not requiring the unbundling of trustee fees when calculating trust taxes. Plaintiffs and amicus also argue that the

---

**5.** The conference committee accepted the Senate's proposal, with some modifications. *See* H.R. Conf. Rep. No. 841, 99th Cong., 2d Sess. II–766, U.S.Code Cong. & Admin.News 1986, 4075, *reprinted in* 1986–3 C.B. Vol. 4 at 766, App. A.

**6.** Plaintiffs argue that Congress acquiesced in the Sixth Circuit's interpretation of I.R.C. § 67(e)(1) in *O'Neill* when Congress revised the Internal Revenue Code four times since the Sixth Circuit issued its decision and did not choose to amend I.R.C. § 67(e)(1) to modify or reject that court's interpretation. But in the absence of evidence that Congress considered the Sixth Circuit's interpretation of I.R.C. § 67(e)(1), modifications thereto would not demonstrate Congressional acquiescence. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 336 n. 7, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971) ("[Respondent] can point to no direct evidence that Congress ever considered the issue now before us or voiced any views upon it; on the contrary, it appears that Congress left the matter for authoritative resolution in the courts."); *see also Plasterers Local Union No. 79 v. NLRB*, 440 F.2d 174, 185 (D.C.Cir.1970) ("Reenactment of a section of law does not of itself constitute conclusive legislative approval of either decisions or administrative regulations construing the provision, in the absence of a showing that the attention of Congress was specifically directed to the matter at hand."), *rev'd on other grounds*, 404 U.S. 116, 92 S.Ct. 360, 30 L.Ed.2d 312 (1971). Congress has not reenacted I.R.C. § 67 in its entirety in the years following the Sixth Circuit's decision in *O'Neill*. Instead, Congress has made only two minor modifications to I.R.C. § 67(b), which is not at issue in this case. There is no evidence that Congress examined, much less approved of, the Sixth Circuit's decision in *O'Neill*.

determination of whether costs "would not have been incurred if the property were not held in such trust" would itself be difficult, costly, and burdensome.

In response, this case involves fees paid by trustees to outside advisors and not fees paid directly to trustees for their own services. The IRS, at least in *O'Neill* and in this action, has taken the consistent position that such fees paid to outside sources are potentially subject to the two percent floor for miscellaneous deductions. Hence, the government's position as to the proper application of I.R.C. § 67(e)(1) to the instant facts is apparently consistent with IRS past practice.

Next, as to the alleged difficulty in administering I.R.C. § 67(e)(1) according to its plain meaning, it is not apparent that assessing whether costs "would not have been incurred if the property were not held in such trust,"or, if ultimately required by the IRS, apportioning previously unbundled trustee fees, would present an inordinately costly exercise. The IRS has considerable leeway in adopting procedures and regulations for enforcement of I.R.C. § 67(e)(1) so as to keep the cost of compliance reasonably contained. *See Commissioner v. Engle*, 464 U.S. 206, 226–27, 104 S.Ct. 597, 78 L.Ed.2d 420 (1984), *quoting* I.R.C. § 7805(a) ("The Commissioner has broad authority to prescribe all 'needful rules and regulations' for the enforcement of the tax laws, and it is up to him to choose the method that best implements the statutory mandate."); *see also Angelus Milling Co. v. Commissioner*, 325 U.S. 293, 297, 65 S.Ct. 1162, 89 L.Ed. 1619 (1945) (treasury regulations may be promulgated "to avoid dilatory, careless, and wasteful fiscal administration by barring incomplete or confusing claims.").[7]

In any event, with respect to complaints about potential costs that would result from legislation, it is the responsibility of Congress, and not the courts, to establish tax policy. In cases such as the instant case, the task of the courts is limited. Where the wording of the statute is plain and unambiguous and the result is not "absurd," *Hartford Underwriters Insurance Co. v. Union Planters Bank*, 530 U.S. 1, 120 S.Ct. 1942, 1947, 147 L.Ed.2d 1 (2000), the court is obliged to apply the statute as written. *See Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992). Here, applying the statute as written hardly can be characterized as providing an "absurd" result in that it furthers the purpose, articulated in the legislative history and described above, of promoting fairness in tax policy. To the extent that plaintiffs or amicus wish to argue that in the instant action fairness comes at too high a price, they should present such arguments to Congress and seek an appropriate amendment to I.R.C. § 67(e)(1).

## VI.

Summary judgment is appropriate where there is no genuine issue of material fact (*i.e.*, a fact that might affect the outcome of the suit) and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party may satisfy its burden on summary judgment by showing an absence in the record of evidence to support the nonmoving party's ability to satisfy its ultimate burden. *See id.* at 324, 106 S.Ct. 2548.

---

7. Plaintiffs and amicus argue that application of the plain meaning of I.R.C. § 67(e)(1) would require a costly factual inquiry into whether a particular individual holding assets in a nontrust context would have incurred the costs in issue. But based on *O'Neill* and the instant action, it appears that the IRS rejects such a subjective approach and favors instead an analysis of the type and nature of the services provided and an objective inquiry into whether a reasonable person exercising domain over the funds would have incurred the costs in a nontrust context.

In a tax refund action, the plaintiff taxpayer bears the burden of proving its entitlement to the amount sought. *See Charron v. United States,* 200 F.3d 785, 792 (Fed.Cir. 1999), *citing United States v. Janis,* 428 U.S. 433, 440, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). Here, plaintiffs base their motion for summary judgment on an interpretation of the second prerequisite in I.R.C. § 67(e)(1) that includes all costs that a trustee incurs in furtherance of its state fiduciary obligations. Because the court disagrees with this proposed interpretation, it follows that the court must deny plaintiffs' motion for summary judgment.

██ Defendant's motion for summary judgment is deficient for a different reason. As described above, the dispositive issue before this court is whether the disputed costs involving investment advice and RKM & S services "would not have been incurred if the property were not held in such trust." To support its motion for summary judgment, defendant does not present any affidavits or point to any portions of the record that show that there is a lack of evidence to support a finding that the disputed costs "would not have been incurred if the property were not held in such trust." Instead, in its motion, defendant asks this court "to take judicial notice of facts manifested on the financial pages of any newspaper: individuals *often* pay investment-advisory fees for property not held in trust, and individuals also pay accounting and management fees for property not held in trust" (emphasis added). But with respect to the fees paid by the trustees to private investment advisors, assuming the court were to take such judicial notice, that notice itself would not be sufficient to support summary judgment. The term "often" is defined as follows: "on many occasions ... frequently." *Webster's Third New Int'l Dictionary* 1568 (1976). Hence, the fact that individuals "often" pay investment advisory fees for property not held in trust suggests that "on many occasions" they do not. In support of its motion, defendant offers no guidance as to why, on the particular facts of this case, the court should conclude that this case falls within the first group where investment advisory fees would have been incurred in the absence of a trust. With respect to

the fees for accounting, tax preparation, and management services paid to RKM & S, defendant contends that the services RKM & S provides for individuals are "generally similar to the services it provides for trusts, except in format." But in their response to defendant's motion, plaintiffs present deposition testimony to support the conclusion that such services when provided for a trust are "more onerous" than those provided for individuals. If true, this indicates that at least some of the fees paid to RKM & S "would not have been incurred if the property were not held in such trust." Before the grant of summary judgment could be warranted, further amplification is needed as to the precise services provided by RKM & S and the extent to which each of these services is of a type which "would not have been incurred if the property were not held in such trust."

### Conclusion

For the reasons set forth above, the parties' cross-motions for summary judgment are each denied. On or before August 16, 2000, the parties shall file a status report, jointly or separately, advising the court as to their intentions with respect to further proceedings in this action.

IT IS SO ORDERED.