PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

J. H. SCOTT; SHELAH K. SCOTT;
ANNE K. MCGUIRE; TRUST UNDER
THE WILL OF JOHN STEWART BRYAN,
by and through its co-trustees, C.
Cotesworth Pinckney, Lucius H.
Bracey, Jr. and Richard T. Taylor;
TIMOTHY W. CHILDS, Deceased,
Hope S. Childs, Executrix, HOPE S.
CHILDS, Individually,
    *Plaintiffs-Appellants,*

   v.

UNITED STATES OF AMERICA,
    *Defendant-Appellee.*

No. 02-1464

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
David G. Lowe, Magistrate Judge.
(CA-01-177-3)

Argued: February 25, 2003

Decided: May 1, 2003

Before LUTTIG, TRAXLER, and KING, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Luttig and Judge Traxler joined.

## COUNSEL

**ARGUED:** Ronald David Aucutt, MCGUIREWOODS, L.L.P., McLean, Virginia, for Appellants. Gilbert Steven Rothenberg, Tax

Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Craig D. Bell, MCGUIRE-WOODS, L.L.P., Richmond, Virginia, for Appellants. Eileen J. O'Connor, Assistant Attorney General, Paul J. McNulty, United States Attorney, Anthony T. Sheehan, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

## OPINION

KING, Circuit Judge:

Four federal taxpayers — a trust and three of its beneficiaries — appeal a district court's decision that they were not entitled to tax deductions for fees paid to investment advisors. *Scott v. United States*, CA No. 3:01CV177, Memorandum Opinion (E.D. Va. Feb. 28, 2002) (the "Opinion"). In particular, the taxpayers maintain that a trust's investment-advice fees should be fully deductible under § 67(e) of the Internal Revenue Code because such fees are incurred as a result of the fact that the income-producing property is held in trust. For the reasons explained below, we agree with the Government that such investment-advice fees are not fully deductible, and we affirm, albeit on alternate grounds, the district court's award of summary judgment.

I.

A.

This appeal involves the Trust Under the Will of John Stewart Bryan (the "Bryan Trust" or the "Trust") and three of its income beneficiaries. In 2001, these four taxpayers (collectively, the "taxpayers") filed four separate lawsuits in the Eastern District of Virginia, seeking refunds for taxes paid in the 1996 and 1997 tax years. The suits were consolidated because they all raise the same issue: whether a trust is entitled to deduct, in full, fees paid for investment advice.

To resolve this issue, it is necessary to understand certain essential legal principles governing federal taxation of trusts and estates. First

and foremost, an individual taxpayer is entitled to deduct fees for investment advice only to the extent that the sum of those fees, plus the taxpayer's other miscellaneous itemized deductions, exceeds 2% of the taxpayer's adjusted gross income. I.R.C. § 67(a).[1] Under § 67(e) of the Internal Revenue Code (the "I.R.C."),[2] estates and trusts are subject to this same 2% floor, except to the extent that trust-related administrative costs "would not have been incurred if the property were not held in such trust or estate." *Id.* § 67(e)(1).[3] If the fees qualify for the exception created by § 67(e), they are fully deductible in calculating adjusted gross income.

Our sister circuits have split over the proper resolution of the legal issue presented here, that is, whether a trust's investment-advice fees are fully deductible under § 67(e). In *O'Neill v. Commissioner of Internal Revenue*, 994 F.2d 302 (6th Cir. 1993), the Sixth Circuit held that such fees are fully deductible because trustees incur them in performing their fiduciary duties, duties which do not affect ordinary individual taxpayers. Conversely (and more recently), the Federal Circuit, in *Mellon Bank, N.A. v. United States*, 265 F.3d 1275 (Fed. Cir.

---

[1]Section 67(a) of the Internal Revenue Code provides: "In the case of an individual, the miscellaneous itemized deductions for any taxable year shall be allowed only to the extent that the aggregate of such deductions exceeds 2 percent of adjusted gross income." I.R.C. § 67(a) (codified at 26 U.S.C. § 67(a)).

[2]The Internal Revenue Code is codified in Title 26 of the United States Code, and I.R.C. § 67 is codified at 26 U.S.C. § 67. For ease of reference, we cite to the I.R.C. rather than to the United States Code.

[3]Section 67(e) of the I.R.C. provides, in relevant part:

Determination of adjusted gross income in case of estates and trusts. — For purposes of this section, the adjusted gross income of an estate or trust shall be computed in the same manner as in the case of an individual, except that —

(1) the deductions for costs which are paid or incurred in connection with the administration of the estate or trust and which would not have been incurred if the property were not held in such trust or estate . . .

shall be treated as allowable in arriving at adjusted gross income. I.R.C. § 67(e).

2001), held that such investment-advice fees are subject to the 2% floor regardless of a trustee's fiduciary duties, because such fees are commonly incurred by individuals. *Id.* at 1281. According to the Federal Circuit, investment-advice fees do not qualify for the exception established by § 67(e).[4]

B.

Between 1932 and 1942, John Stewart Bryan became a grandfather to four girls (all sisters). These granddaughters include taxpayers Shelah K. Scott, Hope S. Childs, and Anne K. McGuire.[5] On October 16, 1944, pursuant to Bryan's will, the Bryan Trust was established under Virginia law. The Trust directed the payment of all of its current income in quarterly installments to a series of lifetime beneficiaries, ending with Bryan's granddaughters. When a granddaughter dies, her share of the Trust's income passes to her husband and children as directed in her will or, if there is no provision in her will, to her descendants *per stirpes*. Upon the death of the last granddaughter, each granddaughter's share of the Trust's principal is to be distributed to her husband and children as directed in her will or, if there is no provision in her will, to her descendants *per stirpes*.

The Bryan Trust authorized its trustees to make a broad variety of investments "whether or not any investment shall produce income," "without regard to any statute or other law concerning the investment

---

[4]In sum, four other courts have previously considered the issue presented here — the Court of Federal Claims (as a trial court) and the Federal Circuit in *Mellon Bank*, and the Tax Court (the trial court) and the Sixth Circuit in *O'Neill*. Of these four courts, three have concluded that a trust's investment advice fees are subject to the 2% floor. *See Mellon Bank, N.A. v. United States*, 265 F.3d 1275 (Fed. Cir. 2001); *Mellon Bank, N.A. v. United States*, 47 Fed. Cl. 186 (Fed. Cl. 2000); *O'Neill v. Comm'r of Internal Revenue*, 98 T.C. 227 (T.C. 1992). Only the Sixth Circuit in *O'Neill* has held that a trust's investment-advice fees are fully deductible under § 67(e). *See O'Neill v. Comm'r of Internal Revenue*, 994 F.2d 302, 304 (6th Cir. 1993).

[5]The fourth granddaughter, Constance K. Tucker, lived in Ohio during 1996 and 1997. No adjustments were made to her 1996 and 1997 tax returns, and she is not a party to this litigation.

of trust funds," and "without incurring liability for losses as a result of such investments." It also directed the trustees to keep "in mind possible changes in monetary or other standards which might affect the purchasing power" of Trust assets. The Trust authorized its trustees to employ investment advisors and to pay those advisors reasonable charges and fees for their services.

In 1971, the trustees of the Bryan Trust retained Brundage, Story and Rose, LLC ("BS&R"), an investment-counseling firm in New York City, which provides its clients with a full spectrum of investment advice and monitoring services. BS&R's clients include not only institutions such as trusts, endowments, foundations, and pension plans, but also wealthy individuals and families. BS&R provides an identical range of services to both institutional and individual clients.

During 1996 and 1997, the tax years at issue in this case, the Bryan Trust had assets worth approximately $25 million. The income beneficiaries were Scott, Childs, McGuire, and their sister who lived in Ohio. The trustees were three lawyers — C. Cotesworth Pinckney (a partner at Troutman Sanders LLP, which was known as Mays & Valentine, LLP during the tax years at issue), Lucius H. Bracey, Jr. (a partner at McGuireWoods LLP), and Richard T. Taylor (a former partner at Cadwalader, Wickersham & Taft LLP). The taxpayers allege that the trustees lacked expertise in the investment of large sums of money and that they would not have served without outside investment advice.

In 1996 and 1997, respectively, the Bryan Trust paid BS&R $107,055 and $119,943 in fees for investment advice. The Trust also paid custodian fees, trustees' fees, and fees for the preparation of income tax returns and accountings.

C.

On their 1996 and 1997 income tax returns, the taxpayers reported the investment-advice fees paid to BS&R as "other deductions," not subject to the 2% floor for miscellaneous itemized deductions. After an audit, the IRS determined that the investment-advice fees were, in fact, miscellaneous itemized deductions subject to the 2% floor. I.R.C. § 67(a). Consequently, the IRS concluded that the taxpayers

owed additional income taxes for the 1996 and 1997 tax years. In early 2000, the taxpayers paid the additional taxes and interest. They then filed refund claims with the IRS, contending that the investment-advice fees that the Bryan Trust had paid to BS&R were not subject to the 2% floor applicable to miscellaneous itemized deductions. The IRS denied the refund claims.

Thereafter, the taxpayers filed their four refund suits in the Eastern District of Virginia. After the suits were consolidated, the Government filed a motion for summary judgment in which it maintained, consistent with the Federal Circuit's decision in *Mellon Bank*, that the Trust's investment-advice fees were subject to the 2% floor. The taxpayers filed a cross motion for summary judgment contending, in accordance with the Sixth Circuit's decision in *O'Neill*, that the fees qualified for § 67(e)'s exception from the 2% floor. At oral argument on the motions, the court raised a new issue — that is, the immunity afforded under Virginia law to trustees who invest trust assets in a statutory list of approved investments. *See* Va. Code Ann. § 26-45.1 (Michie 1992) (the "Virginia legal list").[6] The court sought additional briefing on the potential impact of that immunity on the deductibility of investment-advice fees.

After further briefing and argument on the Virginia law issue, the court granted the Government's motion for summary judgment. Opinion at 10.[7] The court explained that, under Virginia law, trustees could

---

[6]The current version of the Virginia legal list, effective January 1, 2000, is codified at Va. Code Ann. §§ 26-45.3 to 26-45.14 (Michie 2001). The relevant law for this case, however, is the pre-2000 version of the statute.

[7]By consent of the parties, the consolidated case was referred to a United States magistrate judge for all purposes. 28 U.S.C. § 636(c). The magistrate judge's Opinion disposed of the parties' cross-motions for summary judgment. In issuing the Opinion, the magistrate judge was acting for the court, and we therefore refer to the Opinion as that of the district court. *Id.* § 636(c)(1) ("Upon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves.").

fully satisfy their fiduciary duties by limiting themselves to certain investments specifically authorized by the Virginia legal list. Opinion at 5-11; *see also* Va. Code Ann. § 26-45.1 (Michie 1992). The court acknowledged that investments authorized by the Virginia legal list might not be the best investments from a financial perspective and that trustees "would probably be better served" by seeking investment advice. Opinion at 10. The court concluded, however, that the trustees were under no obligation to do so. *Id.* Accordingly, the court concluded that when a Virginia trustee seeks investment advice "he is doing nothing different than what an individual investor might do" in that a trustee's "need" and an individual's "need" for investment advice both spring from the same desire — to increase profitability. *Id.*

Pursuant to this reasoning, the court decided that the Trust's investment-advice fees were subject to the 2% floor of § 67(a), and it awarded summary judgment to the Government. Opinion at 10-11. The taxpayers have filed a timely notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review de novo a district court's award of summary judgment. *See Estate of Armstrong v. United States*, 277 F.3d 490, 495 (4th Cir. 2002). Summary judgment is appropriate only when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In this case, we are primarily faced with issues of statutory interpretation, which are legal issues that we review de novo. *Lane v. United States*, 286 F.3d 723, 730 (4th Cir. 2002). We are, of course, entitled to affirm on any ground appearing in the record, including theories not relied upon or rejected by the district court. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## III.

The taxpayers maintain that the district court erred in holding that the Trust's investment-advice fees were subject to the 2% floor of § 67(a). They claim that the fees should instead be fully deductible

under the exception to § 67(a) created by § 67(e), in that the fees "would not have been incurred if the property were not held in trust." I.R.C. § 67(e). The Government, by contrast, contends that investment advice is commonly sought by wealthy individuals, that a trust's investment-advice fees are thus not incurred because the property is held in trust, and that, as a result, the § 67(e) exception does not apply to such fees.

A.

Section 1 of the I.R.C. imposes a tax on all "taxable income" of individuals and trusts. *Id.* § 1. The computation of taxable income begins with a determination of "gross income," which is defined as "all income from whatever source derived." *Id.* § 61(a). Taxpayers can then subtract from gross income certain "above-the-line" deductions (i.e., trade and business expenses, losses from the sale or exchange of property, and deductions attributable to rents and royalties) to arrive at "adjusted gross income." *Id.* § 62(a). "Taxable income" is then calculated by subtracting from adjusted gross income the "itemized" (or "below-the-line") deductions, consisting of all deductions *other* than (1) above-the-line deductions and (2) the deductions for personal exemptions under I.R.C. § 151. *Id.* § 63.

In the case of individuals, the majority of itemized deductions are "miscellaneous itemized deductions," which are deductible "only to the extent that the aggregate of such deductions exceeds 2 percent of adjusted gross income." *Id.* § 67(a). The only itemized deductions exempted from the 2% floor are enumerated in I.R.C. § 67(b). In other words, all itemized deductions are subject to the 2% floor unless specifically removed from that category by § 67(b).[8]

In this case, the investment-advice fees fall within I.R.C. § 212, which allows a deduction for ordinary and necessary expenses paid or incurred in producing income and in managing property held for

---

[8]The deductions excepted from the 2% floor include the deductions for: interest (I.R.C. § 163); state and local income and property taxes (I.R.C. § 164); casualty and theft losses (I.R.C. § 165); charitable contributions (I.R.C. § 170); and medical expenses (I.R.C. § 213). I.R.C. § 67(b).

the production of income. *See* Treas. Reg. § 1.212-1(g), (i) (codified at 26 C.F.R. § 1.212-1(g), (i)). Because the expenses deductible under § 212 are not listed in § 67(b), such expenses are generally subject to the 2% floor established by § 67(a). *See* Temp. Treas. Reg. § 1.67-1T(a)(1)(ii) (codified at 26 C.F.R. § 1.67-1T(a)(1)(ii)) (explaining that miscellaneous itemized deductions include investment-advisory fees).

Section 67(e), however, modifies (in part) the general 2% floor created by § 67(a) in the context of trusts and estates. Section 67(e) provides in relevant part:

> [T]he adjusted gross income of an estate or trust shall be computed in the same manner as in the case of an individual, except that —
>
> > (1) the deductions for costs which are paid or incurred in connection with the administration of the estate or trust and which would not have been incurred if the property were not held in such trust or estate . . .
>
> shall be treated as allowable in arriving at adjusted gross income.

I.R.C. § 67(e). Thus, § 67(e) establishes the general rule that the adjusted gross income of an estate or trust must be "computed in the same manner as in the case of an individual." *Id.* An exception to that rule is provided in § 67(e)(1), which allows deductions (above the line and without regard to the 2% floor) for costs that (1) "are paid or incurred in connection with the administration of the . . . trust"; and (2) "would not have been incurred if the property were not held in such trust." *Id.* § 67(e)(1).

It is undisputed that the investment-advice fees in this case were "paid or incurred in connection with the administration of the . . . trust." *Id.* Thus, the issue presented here, and on which our two sister circuits have disagreed, is whether a trust's investment-advice fees fit within the second requirement of § 67(e)(1), such that they should be fully deductible without regard to the 2% floor established by § 67(a).

Accordingly, we are called upon to interpret the meaning of, and relationship between, provisions of § 67(a) and § 67(e).

B.

When interpreting a statute, the goal is always to ascertain and implement the intent of Congress. *Brown & Williamson Tobacco Corp. v. FDA*, 153 F.3d 155, 161-62 (4th Cir. 1998), *aff'd*, 529 U.S. 120 (2000); *Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1482 (4th Cir. 1996) (en banc). The first step of this process is to determine whether the statutory language has a plain and unambiguous meaning. If the statute is unambiguous and if the statutory scheme is coherent and consistent, our inquiry ends there. *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002); *see also Rosmer v. Pfizer Inc.*, 263 F.3d 110, 118 (4th Cir. 2001), *cert. dismissed*, 123 S. Ct. 14 (2002) (holding that circuit splits and differences in statutory interpretation do not establish ambiguity).

When examining statutory language, we generally give words their ordinary, contemporary, and common meaning. *Williams v. Taylor*, 529 U.S. 420, 431 (2000); *United States v. Maxwell*, 285 F.3d 336, 340-41 (4th Cir. 2002); *United States v. Lehman*, 225 F.3d 426, 428-29 (4th Cir. 2000). The Supreme Court has explained that "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *Maxwell*, 285 F.3d at 340-41; *Brown & Williamson Tobacco Corp.*, 153 F.3d at 161-63. Where possible, we must give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or superfluous. *Freytag v. Comm'r Internal Revenue*, 501 U.S. 868, 877 (1991).

C.

Applying these canons of statutory construction to § 67(e), we conclude that its text is clear and unambiguous. Thus, we need not reference any of the legislative history brought to our attention by the parties. The text of § 67(e) establishes that the adjusted gross income of a trust is generally computed in the same manner as the adjusted

gross income of an individual. I.R.C. § 67(e) ("For purposes of this section, the adjusted gross income of an estate or trust shall be computed in the same manner as in the case of an individual."). Under that general rule, the deductions claimed by a trust are typically treated as miscellaneous itemized deductions subject to the 2% floor of § 67(a).

Section 67(e)(1) then establishes an exception to the general rule, allowing certain costs to be deducted in full in computing the adjustable gross income of a trust. It is this exception that the taxpayers attempt to invoke here. Two requirements must be satisfied in order for costs to qualify for the § 67(e)(1) exception. First, the costs incurred by the trust must have been "paid or incurred in connection with the administration of the . . . trust." *Id.* There is no dispute that the investment-advice fees at issue satisfy this requirement.

Second, and importantly for this case, the costs must have been expenses "which would not have been incurred if the property were not held in such trust." *Id.* The verb "would" in the context of § 67(e)(1) expresses concepts such as custom, habit, natural disposition, or probability. *Webster's Third New International Dictionary* 481 (1976); *American Heritage Dictionary of the English Language* 20-42, 2059 (3d ed. 1992). Thus, "the second requirement treats as fully deductible only those trust-related administrative expenses that are unique to the administration of a trust and not customarily incurred outside of trusts." *Mellon Bank*, 265 F.3d at 1280-81; *see also Mellon Bank, N.A. v. United States*, 47 Fed. Cl. 186, 188-89 (Fed. Cl. 2000). Put simply, trust-related administrative expenses are subject to the 2% floor if they constitute expenses commonly incurred by individual taxpayers.

Because investment-advice fees are commonly incurred outside the context of trust administration, they are subject to the 2% floor created by § 67(a). Other costs ordinarily incurred by trusts, such as fees paid to trustees, expenses associated with judicial accountings, and the costs of preparing and filing fiduciary income tax returns, are not ordinarily incurred by individual taxpayers, and they would be fully deductible under the exception created by § 67(e). Such trust-related administrative expenses are solely attributable to a trustee's fiduciary duties, and as such are fully deductible under § 67(e). Investment-

advice fees, by contrast, are often incurred by individual taxpayers in the management of income-producing property not held in trust.

As the Government points out, we would, by holding that a trust's investment-advice fees were fully deductible, render meaningless the second requirement of § 67(e)(1). All trust-related administrative expenses could be attributed to a trustee's fiduciary duties, and the broad reading of § 67(e)(1) urged by the taxpayers would treat as fully deductible any costs associated with a trust. But the second clause of § 67(e)(1) specifically limits the applicability of § 67(e) to certain types of trust-related administrative expenses. To give effect to this limitation, we must hold that the investment-advice fees incurred by the Trust do not qualify for the exception created by § 67(e). Rather, they are subject to the 2% floor established by § 67(a).

## D.

In reaching our decision today, we find ourselves in agreement with the Federal Circuit's reasoning in *Mellon Bank*, and we thus render a decision at odds with the Sixth Circuit's holding in *O'Neill*. In *O'Neill*, the Sixth Circuit reasoned that "[w]here a trustee lacks experience in investment matters, professional assistance may be warranted." 994 F.2d at 304. According to the court, without investment advice, "the co-trustees would have put at risk the assets of the Trust. Thus, the investment advisory fees were necessary to the continued growth of the Trust and were caused by the fiduciary duties of the co-trustees." *Id.* In our judgment, this analysis contains a fatal flaw. Of course, trustees often (and perhaps must) seek outside investment advice. But the second requirement of § 67(e)(1) does not ask whether costs are commonly incurred in the administration of trusts. Instead, it asks whether costs are commonly incurred *outside* the administration of trusts. As the Federal Circuit decided in *Mellon Bank*, investment-advice fees are commonly incurred outside the administration of trusts, and they are therefore subject to the 2% floor established by § 67(a).[9]

---

[9]In concluding that the Trust's investment-advice fees do not qualify for the exception of § 67(e), we resolve the appeal on this alternative basis and do not reach the issue decided by the district court on how the Virginia legal list affects the application of § 67(e). *See* Opinion at 5-10.

## IV.

For the foregoing reasons, we affirm (on alternate grounds) the decision of the district court.

*AFFIRMED*