**DANA CORPORATION,**
**Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–**
**Cross Appellant.**

**Nos. 98–5031, 98–5056.**

United States Court of Appeals,
Federal Circuit.

April 7, 1999.

Eric R. Fox, Ivins, Phillips & Barker, Washington, DC, argued for plaintiff-appellant. With him on the brief were Rob-

ert P. Hanson and David G. Coolidge, Washington, DC.

Charles Bricken, Attorney, Appellate Section, Tax Division, Department of Justice for defendant-cross appellant. With him on the brief were Loretta C. Argrett, Assistant Attorney General, and Ann B. Durney, Attorney.

Before NEWMAN, MICHEL, and LOURIE, Circuit Judges.

MICHEL, Circuit Judge.

Plaintiff–Appellant Dana Corporation ("Dana") appeals from the grant of partial summary judgment to the government by the United States Court of Federal Claims in *Dana Corp. v. United States*, 38 Fed. Cl. 356 (1997), upholding as within the Internal Revenue Service's ("IRS's") discretion its requirement that Dana's subsidiary recalculate its income taxes for certain years using the accrual, rather than the cash, method of accounting. The government cross-appeals from the trial court's granting in part of Dana's motion for summary judgment, upholding the deductibility, as an ordinary and necessary business expense, of a certain year's legal retainer fee, even though applied, as a contractual obligation, as an offset against capital acquisition legal expenses in that year. The appeal was orally argued on October 5, 1998. We hold that requiring one of Dana's domestic subsidiaries, Potomac Leverage Leasing ("Leverage Leasing"), to recalculate its federal income taxes using the accrual method of accounting was an abuse of the Commissioner's discretion under I.R.C. § 446(b) (1984). Congress permits deductions for advance payment of accrued interest and this, as reflected in Dana's cash method of accounting, is what must determine the deductibility of the interest payments actually made by Leverage Leasing on its loans. Yet the Commissioner required the change in tax accounting method on the ground that the cash method distorted the relationship between such payments and receipts and hence the calculation of taxable income. What is authorized by Congress cannot be

within the Commissioner's discretion to deny.

As to the government's cross-appeal, we grant it, holding the 1984 retainer fee non-deductible due to the use of the retainer fee to pay non-deductible legal services. Dana has a sixteen year history of paying annual retainer fees, in part to prevent its law firm from representing other companies in attempted acquisitions of Dana, and in part to receive the benefit of having the law firm represent it in various matters with the contractual right to offset any later fees against the annual retainer fee for a given year. The right of offset was unlimited and, thus, covered both deductible and non-deductible fees for legal services. In most years Dana was allowed to deduct the retainer fee as an ordinary business expense, but we hold that, despite this history, because in 1984, the sole tax year in question, the annual retainer fee was applied toward non-deductible fees for legal services involving a capital acquisition under a provision of the retainer agreement requiring such offset, the 1984 retainer fee is not deductible as an ordinary and necessary business expense.

Accordingly, we grant both the appeal and the cross-appeal, reversing both judgments.

## BACKGROUND

Dana is an Ohio corporation engaged, in part, in real estate leasing. For both the 1984 and 1985 tax years, the only years at issue, Dana and its domestic subsidiaries filed a consolidated federal income tax return, reporting earnings and expenses on a calendar year basis.

Two issues are presented for our review. One involves the method of accounting used for federal income tax purposes for Leverage Leasing. In consolidated federal income tax returns for 1984 and 1985, Leverage Leasing's receipts and expenses were reported using the cash method of accounting, while Dana and its other domestic subsidiaries reported gross income

and expenses using the accrual method. It is undisputed both that Leverage Leasing used the cash method solely to obtain tax benefits, and that such tax motive is not controlling.

During 1984 and 1985, Leverage Leasing was a party to a number of leases under which it was entitled to receive accrued rents, in arrears. In turn, Leverage Leasing was obligated to pay interest, also in arrears, on loans related to the properties for which rents were received in 1984 and 1985. It did so. In December 1984, however, Leverage Leasing also paid interest in arrears that accrued in 1984 but was not actually due for payment, under the terms of the financing arrangements, until 1985. In December 1985, Leverage Leasing likewise paid interest in arrears that had accrued in 1985, but was not due to be paid until 1986. Under the cash method of accounting, receipts are recognized in the year in which received and expenses in the year in which paid.[1] As a consequence of Leverage Leasing's payments of interest in the taxable year before payment was due, its ordinary and necessary business expenses, i.e., interest payments, exceeded its gross income for both 1984 and 1985. It, therefore, had no tax liability. The IRS then determined that, for the tax years 1984 and 1985, the cash method of accounting did not clearly reflect Leverage Leasing's income, stating that the cash method caused excess interest deductions. Under the applicable statute, Internal Revenue Code section 446(b), the IRS accordingly required that Leverage Leasing's federal income tax be recalculated using the accrual method of accounting. This requirement effectively eliminated the deductions for the advance payments.

Using the accrual method of accounting, Leverage Leasing had taxable income for both 1984 and 1985, resulting in additional income tax owing and due the IRS from Dana. Because Dana had paid nothing on account of Leverage Leasing, it was required to pay the full tax so assessed. After paying this deficiency, Dana sought a corresponding refund from the IRS. When Dana challenged the IRS denial in the Court of Federal Claims, the court held that the IRS acted within its discretion in requiring Dana to substitute the accrual method in calculating Leverage Leasing's taxable income. *See Dana Corp.*, 38 Fed. Cl. at 366. Dana appeals that decision here.

The other issue involves the deductibility of Dana's payment in 1984 of a law firm retainer fee. Dana first entered into a retainer agreement with the law firm of Wachtell, Lipton, Rosen and Katz ("Wachtell") in 1976. This one year agreement was automatically renewable and was in fact renewed annually through 1991. Pursuant to the retainer agreement, Dana paid Wachtell a retainer fee of $100,000 on January 1, 1984 and certain other years.

According to the stipulated facts, the agreement's express purposes included keeping Wachtell from representing adverse clients targeting Dana in takeover situations and standing by to represent Dana, both in hostile takeovers and in other legal matters. The retainer agreement, however, also entitled Dana to an offset of any charges incurred through the use of Wachtell's legal services against the retainer fee paid for the corresponding year. In 1984, Dana acquired Warner Electric Brake and Clutch Company ("Warner"). Wachtell billed Dana $265,-

---

**1.** IRS regulations provide that:

Gains, profits, and income are to be included in gross income for the taxable year in which they are actually or constructively received by the taxpayer unless includable for a different year in accordance with the taxpayer's method of accounting. Under an accrual method of accounting, income is includable in gross income when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy.... Under the cash ... method of accounting, such an amount is includable in gross income when actually or constructively received.

Treas. Reg. § 1.451–1(a) (1998).

000 for services rendered in the acquisition, and then offset this charge by the $100,000 retainer. Dana thus paid Wachtell $165,000 in legal fees and capitalized that amount as part of the acquisition cost of Warner. But the $100,000 retainer fee it nevertheless deducted.

In 1985, Dana again paid the annual $100,000 retainer fee but did not use Wachtell's services. Dana again deducted the entire retainer fee as an ordinary and necessary business expense. The IRS, however, classified the 1984 retainer fee as a non-deductible capital cost of the Warner acquisition although it allowed the deduction of the 1985 retainer as an ordinary and necessary business expense. The IRS and Dana agree that the 1984 retainer fee would have constituted a proper deduction as much as the 1985 fee had it not later been offset against the legal services fee for the Warner acquisition.

The Court of Federal Claims granted in part Dana's motion for summary judgment, approving the deductibility of the 1984 retainer fee and holding that the retainer fee was indeed an ordinary and necessary business expense in 1984, despite its use to offset legal services fees related to the capital acquisition. *See Dana Corp.*, 38 Fed. Cl. at 366. The government cross-appeals that decision here.

## DISCUSSION

Under Rule 56(c) of the Rules of the Court of Federal Claims, summary judgment is properly rendered when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A grant of summary judgment is reviewed *de novo*. *See Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575 (Fed.Cir.1994).

Summary judgment was appropriate here because no material facts were disputed, many being stipulated, and the only disputed issues were issues of law. More-over, on each issue one party or the other is entitled to judgment as a matter of law. To review the trial court's grant of partial summary judgment to the government we must determine whether the IRS abused its discretion in requiring that Leverage Leasing's federal income taxes be calculated using the accrual method of accounting for tax years 1984 and 1985. *See RCA Corp. v. United States*, 664 F.2d 881, 886 (2d Cir.1981). To review the trial court's grant of partial summary judgment to Dana we must determine whether, given its actual use, to pay legal fees for a capital acquisition, the 1984 legal retainer fee paid by Dana was still deductible as an "ordinary and necessary business expense." I.R.C. § 162(a).

Dana timely filed its complaint with the Court of Federal Claims seeking refunds for 1984 and 1985 plus interest. The Court of Federal Claims ruled on July 15, 1997. *See Dana Corp.*, 38 Fed. Cl. 356. Dana and the government, respectively, timely appealed and cross-appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(3) (1994).

## I. The Required Change in Method of Tax Accounting

■ Internal Revenue Code section 446(b) provides, "[i]f no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income." Dana used the accrual method of accounting for itself and all of its domestic subsidiaries except Leverage Leasing. The IRS determined that the cash method of accounting did not clearly reflect the 1984 and 1985 income of Leverage Leasing, and therefore the IRS required that Leverage Leasing's taxable income be recomputed under the accrual method of accounting. As the Second Circuit has held:

[i]t is well established that the Commissioner enjoys "broad discretion" to

determine whether, "in his opinion" a taxpayer's accounting methods clearly reflect income, *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 540 [99 S.Ct. 773, 58 L.Ed.2d 785] (1979) (quoting 26 C.F.R. § 1.446–1(a)(2)), and the Commissioner's exercise of his discretion must be upheld unless it is clearly unlawful. . . .

*RCA*, 664 F.2d at 886. We thus review the IRS decision, upheld by the Court of Federal Claims, for abuse of discretion. Dana, of course, has the burden of persuading us that the IRS decision to require Dana to re-calculate its taxes under the accrual method was an abuse of discretion, or that it was "clearly unlawful."

■ Dana principally argues that the IRS abused its discretion because the accrual method of accounting reflects Leverage Leasing's income no more accurately than the cash method of accounting. We are persuaded by Dana's contention that the IRS decision requiring a change in accounting method was an abuse of discretion. It is undisputed that in the instant case, there was a partial mismatching of the accrued rents in arrears received in a given year and the related accrued interest in arrears paid that year. Even so, the Code allows a taxpayer, such as Leverage Leasing, to pay in advance its interest obligations which have already accrued in the way done here for tax advantages. Such advance payments of interest by cash method taxpayers are lawful so long as the interest has accrued, or is otherwise allocable to the tax year for which the interest deduction was taken.[2] Here the interest had accrued, and therefore it was an abuse of the Commissioner's discretion to prevent such an interest deduction when it was allowed by Congress.

Leverage Leasing was entitled to collect, and did collect, in arrears accrued

rents in the amount of $3,756,326 in 1984 and $10,767,201 in 1985. Leverage Leasing was required to pay, and did pay, accrued interest in arrears in the amount of $2,658,156 in 1984 and $10,563,619 in 1985. Leverage Leasing, however, also paid additional interest in the amount of $2,151,011 in 1984 and $3,099,504 in 1985. This additional interest accrued respectively in 1984 and 1985 but payment was not due until 1985 and 1986, respectively. That is, in 1984 it paid both interest due that year and interest due the next year, and in 1985 it paid the interest due in 1986. Consequently, in 1984 and in 1985, Leverage Leasing deducted from its gross income, interest expenses in the amounts of $4,809,167 and $13,663,123, respectively. These expenses were higher than the income for each of these years. These advance interest payments were voluntary on Leverage Leasing's part. They did result in an odd portrayal of Leverage Leasing's taxable income in these two successive years by shifting the temporal relationship between rents received and interest paid in the two years in question. However, such advance payment of accrued interest was made allowable by Congress.

This can be seen by looking at the evolving history of IRS and congressional treatment of the allowable timing for this type of deduction. Until 1968, interest pre-paid by a cash basis taxpayer was always deemed deductible. In 1968, this policy was modified by the Commissioner in Rev. Rul. 68–643, in which the Commissioner concluded that:

> the deduction of prepaid interest in the year of payment by a taxpayer employing the cash ... method of accounting may not result in a clear reflection of income for the taxable year of payment. A deduction for interest paid in advance

---

**2.** Advance payments and pre-payments of interest are different. Pre-paid interest is a specific term used in the Code to refer to a charge deducted in a given tax year for the use of the money during a future tax year. The payments of interest litigated in the instant case, however, represent a charge for

the money that has already accrued but is not yet due to the bank under the terms of the loan agreement. Instead of being a true "pre-payment" of interest, the money here represents a payment in advance of the due date, for interest in arrears.

on each indebtedness for a period not in excess of 12 months of the taxable year immediately following the taxable year in which the prepayment is made will be considered on a case by case basis to determine whether a material distortion of income has resulted.... If interest is prepaid for a period extending more than 12 months beyond the end of the current taxable year, the deduction of such prepaid interest in the taxable year of payment will be considered as materially distorting income.

Rev. Rul. 68–643, 1968–2 C.B. 76. Following up on the Commissioner's action, in 1976 Congress enacted section 461(g) of the Internal Revenue Code which denies a deduction for the payment by a cash basis taxpayer of any interest properly allocable to a period which is after the close of the taxable year in which paid. *See* I.R.C. § 461(g)(1) ("If the taxable income of the taxpayer is computed under the cash receipts and disbursements method of accounting, interest paid by the taxpayer which, under regulations prescribed by the Secretary, is properly allocable to any period ... with respect to which the interest represents a charge for the use or forbearance of money, and ... which is after the close of the taxable year in which paid, shall be charged to capital account and shall be treated as paid in the period to which so allocable."). Congress, however, took no action to prevent the payment of interest in arrears before the due date, so long as the interest was allocable to the year in which it accrued.

The concern of Congress, and the Commissioner, was with pre-payments of interest allocable to a *subsequent* taxable year. Advance payments of accrued interest in arrears, however, would be deductible, even though not yet due, because they "represent[ ] a charge for the use or forbearance of [borrowed] money" during the year in which the interest was accruing. I.R.C. § 461(g)(1)(A).

In the instant case, no interest allocable to a subsequent tax year was pre-paid. Rather, interest was paid by Leverage Leasing only after it had accrued, but in advance of when, under the terms of the loan agreement, it was due. The challenged interest paid in 1984 accrued in 1984, represented the charge for the use of the money in 1984, and simply was not due for payment to the bank, under the terms of the loan agreement, until 1985. In 1984, Leverage Leasing paid the bank both the charge for the use of the money in 1983 (not challenged by the IRS), as the terms of the loan agreement dictate, and the charge for the use of the money in 1984, in advance of when the loan agreement required it to be paid. Similarly, in 1985, Leverage Leasing paid the charge for the use of the money in 1985, even though that payment was not due until 1986. The terms of a contract cannot change the deductibility of the interest being paid. There is no statute preventing the deduction of payment of interest by a cash basis taxpayer after it has accrued but before it is due. Simply because the loan agreement does not require the interest to be paid until a year later does not render payment of such interest in arrears prohibited as a pre-payment of interest. Rather, it is a deductible advance payment of interest.

The Commissioner's discretion obviously cannot trump the will of Congress, and therefore, it was necessarily an abuse of this discretion to determine that Leverage Leasing's payments in advance of accrued interest as allowed by I.R.C. § 461(g) did not clearly reflect Leverage Leasing's income, and to require Dana to recalculate Leverage Leasing's income, including its rental receipts and interest and other expenses, for federal income tax purposes using the accrual method of accounting. The Commissioner cannot do indirectly— by *forcing a change in tax accounting methods*—what the Commissioner cannot do directly—bar deductions for advance payments of accrued interest by cash taxpayers. Nor can the Commissioner blame Dana's accounting system for distorting taxable income when Dana acted in a manner permitted by statute in making these interest payments in advance of when they

were due under the terms of the loan agreement. If it is distortion, Congress has allowed it.

## II. The Deductibility of the 1984 Retainer Fee

The Supreme Court held in *United States v. Gilmore*, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963), that to determine the deductibility of a legal fee one must look to the origin and character of the claim underlying the expense incurred. *See id.* at 49, 83 S.Ct. 623 ("[T]he origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the expense ... is deductible."). Dana argues that under this "origin of the claim" test, the 1984 retainer fee was deductible, because the origin of the retainer fee was the retainer agreement and retainer fees generally are deductible as business expenses. Because both parties agree that the retainer fee was a deductible, ordinary and necessary business expense in nearly all of the preceding and following years, Dana argues that it therefore must likewise be deductible in 1984. Indeed, the same claim seeking to deduct the retainer fee was made in every year from 1976 through 1991, and allowed, at least partially, in nearly every year except 1984.

■ From 1976 through 1983, Dana paid Wachtell an annual retainer fee of $35,000. From 1984 through 1991, Dana paid Wachtell $100,000 annually. In each of seven years, 1976, 1985 through 1988, 1990, and 1991, Wachtell kept the retainer and rendered minimal or no legal services to Dana or any related corporation. In six other years, there were billings but only for deductible (non-capital acquisition) legal services fees. In three of the sixteen years, however, Dana was billed for capital acquisition fees. First, in 1978, Wachtell rendered legal services to Dana in connection with a capital acquisition. The services came to $52,230.29 against a retainer of $35,000. Wachtell offset its charges by the retainer fee and billed Dana $17,-

230.29. For reasons which are unclear, the IRS allowed Dana to take a deduction of $42,230.29 and only the remaining $10,-000 was capitalized as part of the acquisition cost. Second, in 1984, the acquisition of Warner described earlier, which is directly involved in this appeal, took place. The details need not be repeated here. Third, in 1989, Wachtell rendered services to Dana in connection with Dana's acquisition of The Superior Electric Company. Wachtell billed Dana $375,000, which was reduced to a net amount of $275,000 because of the 1989 retainer fee. Dana disputed this bill, and Wachtell reduced it by $100,000. Dana claimed a deduction on its 1989 income tax return for the $100,000 retainer fee paid in that year and capitalized the remaining balance of $175,000 as part of the acquisition cost of Superior Electric. Presumably, the proper tax treatment of this $100,000 is the same as that for the $100,000 in 1984.

The government argues that, because, pursuant to mandatory terms in the agreement, Dana was entitled to be credited by Wachtell with the 1984 retainer fee as partial payment for legal services associated with the acquisition of Warner, the retainer fee therefore became a non-deductible cost of the acquisition. According to the government, the analysis of the deductibility of the fee must be based on what the retainer fee actually bought in the year in question under the terms of the retainer agreement. The IRS classified the 1984 retainer fee as a non-deductible pre-payment, or deposit, for legal services rendered for a capital purchase. We agree.

We hold that Dana's history of retaining Wachtell through the annual payment of retainer fees cannot establish the 1984 retainer fee as a deductible, ordinary and necessary business expense under Internal Revenue Code section 162(a). Even though the retainer fees were allowed as deductible expenses for most of the years Dana paid them, the use of the fee in a particular year determines the deductibili-

ty of the expense in that year, and not the pattern of other years of paying it. The 1984 retainer fee was used in 1984 as partial payment of fees for a capital acquisition, a non-deductible expense. In *Gilmore*, the Court looked dispositively to the origin of the claim to determine the deductibility of the legal fees, and, as the trial court correctly emphasized in the instant case, the origin of the 1984 retainer fee is the retainer agreement. *See Gilmore*, 372 U.S. at 49, 83 S.Ct. 623; *Dana Corp.*, 38 Fed. Cl. at 361. We need, therefore, to look to the language of the retainer agreement to determine the deductibility of the retainer fee expense.

The IRS characterization of the 1984 retainer fee as, in effect, an advance deposit on future legal bills for a capital acquisition is apt. One purpose of the retainer fee was to ensure that Wachtell would be on standby and refuse conflicting clients. *See generally In re The Renfrew Ctr. of Fla., Inc.*, 195 B.R. 335, 338 (Bankr. E.D.Pa.1996). The parties stipulated in their joint statement of facts that the retainer agreement was signed by Dana for the "purpose of insuring to Dana that Wachtell's services with respect to takeover issues would be available to Dana, and would not be available to any third party, in the event that a third party undertook a hostile takeover of Dana." Wachtell performed this service in 1984 as well as providing other legal services to Dana. It was equally a requirement of the agreement, however, that Wachtell must treat the retainer fee as a deposit on any fees for legal services billed that year. In 1984, there were bills for such services, which exceeded the $100,000 retainer fee, and which were all for a capital acquisition. Thus, this agreement, unlike many, had the features of a deposit, too. Wachtell was required by the retainer agreement to use the retainer fee as a deposit on any legal services fees. This characteristic renders the origin of the claim the actual use of the money to offset fees, and not simply the payment at the start of the tax year of the annual retainer fee. Retainer agreements are ordinary and necessary

business expenses, if there is no right of offset. Here, however, there was such a right, and, therefore, we must examine the use of the retainer fee to determine its deductibility. Clearly, the use was for a capital acquisition, and hence non-deductible. If the instant retainer agreement had contained no offset clause, or a clause stating that the retainer fee could only be offset against fees for legal services that qualified as ordinary and necessary business expenses, we would face a very different case. We would not have to analyze the use of the fees as we are forced to do in the present case.

The Court of Federal Claims failed to analyze the use of the fees, year by year. It treated all years as identical for deductibility of the retainer fees. Moreover, the court stated that the retainer fee was fully earned on the date paid, January 1, because the fee purchased an enforceable promise to avoid conflicting clients. *See Dana Corp.*, 38 Fed. Cl. at 361. However, Dana sometimes received other services from Wachtell, and pursuant to the retainer agreement was credited against the amount of such legal services fees the amount it paid as a retainer fee. In each of those years, the retainer fee must be seen as an expense incurred by Dana, not when it was initially paid, but rather when Dana would have had to pay Wachtell that same fee for its services, if not for the prepayment under the retainer agreement. Thus, the deductibility of the retainer fee must rise and fall with the deductibility of the services for which the retainer fee actually paid. Therefore, unlike the fees in most other years, and contrary to the view of the trial court, the 1984 retainer fee was not a deductible, ordinary and necessary business expense, because it was subsequently offset against a non-deductible fee for legal services for a capital acquisition, as required by the retainer agreement. It, thus, was a payment toward the capital acquisition legal fees. Thus, the "origin of the claim" does indeed control, as the Court of Federal Claims ruled, but for 1984 the character of the

claim underlying the legal expense incurred must be deemed the legal services cost for the capital acquisition, a non-deductible expense. *See Gilmore,* 372 U.S. at 49, 83 S.Ct. 623. Where the trial court erred was in ignoring the offset obligation under the agreement and treating this agreement as if it were the more typical one requiring only that the firm avoid accepting adverse clients. Thus, the trial court concluded that the retainer fee was fully earned on January 1, but we cannot agree. We hold that both parts of the agreement are critical. That makes all the difference. Under the offset provision, the retainer fee was not fully earned until $100,000 in legal services fees had been credited.

Nor can Dana be heard to complain. If Dana wanted predictably to know that the retainer fee would be fully deductible each year, it could have structured the retainer agreement accordingly. Dana cannot now disown the advantages for which it bargained and got in the offset provision of the agreement. That provision unavoidably meant that the deductibility of the retainer fee could not be determined until the end of the tax year covered by the retainer fee, for deductibility derives from the nature of the legal services fees against which the retainer fee was offset. If the legal services fees are deductible, then so is the retainer fee. If the legal services fees are not deductible, neither is the retainer fee. What tax treatment is appropriate in a scenario with both $100,000 of deductible legal service fees and $100,000 in non-deductible fees for a capital acquisition, we need not decide. The sole issue here is whether the $100,000 retainer fee for 1984 is deductible as it was applied here—in toto for non-deductible capital acquisition fees. We hold that it is not.

## CONCLUSION

Because we hold the IRS abused its discretion in requiring the change in tax accounting method and because Dana was not entitled to deduct the 1984 retainer fee, as it was used to pay non-deductible legal services fees for a capital acquisition,

the summary judgment to the government on the change in the accounting method and the summary judgment to Dana on deductibility of the retainer fee in 1984, are both

*REVERSED.*